Liam P. SULLIVAN, Appellant,

v.

The MAYOR and Council OF the
TOWN OF ELSMERE,
Appellees.

No. 467, 2010.

Supreme Court of Delaware.

Submitted: April 20, 2011.
Decided: June 17, 2011.

Robert C. McDonald, Silverman, McDonald & Friedman, Wilmington, Delaware for appellant.

Joseph Scott Shannon, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware for appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the Court en banc.

STEELE, Chief Justice:

The Mayor and Town Council (collectively, the Panel) of the Town of Elsmere terminated Liam Sullivan's employment as Chief of Police. Sullivan appealed his termination to the Superior Court, which affirmed the Panel's decision. Sullivan now appeals the Superior Court judgment. Because the Panel's failure to recuse a biased member could not be cured by the votes of the remaining Panel members, the Panel violated Sullivan's due process rights. Therefore, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

On June 15, 2008, Sullivan became the Chief of Police for the Town of Elsmere. On February 12, 2009, the Panel held an executive session, in part, to consider whether Sullivan was fit to continue as Police Chief. At the session, the Panel questioned Sullivan regarding decisions he had made and provided Sullivan with what he characterized as a multiple page "list of concerns."

On June 11, 2009, the Panel introduced Town Ordinance 509. Ordinance 509 eliminated Chapter 48 of the Police Department's Rules and Regulations governing investigatory and disciplinary processes concerning the Police Chief. In its place, Ordinance 509 substituted 11 *Del. C.* § 9301. The Panel formally enacted Ordinance 509 on July 9, 2009.

Also on June 11, the Panel moved into a brief executive session during which it issued a "Notice of Admonition" to Sullivan. This Notice included twenty eight specific "deficiencies" regarding his conduct as Police Chief and the business of the Department of Public Safety for which he was responsible. According to the Notice, the list embodied those deficiencies the Panel addressed with Sullivan at its executive session on February 12. The following week, the Panel placed Sullivan on administrative leave.

On July 13, 2009, Town Solicitor Edward McNally sent a letter advising Sullivan that the Panel had scheduled a public hearing to determine whether it should terminate Sullivan as Police Chief. In the letter, McNally wrote that: "The ground for termination is that the Department of Public Safety is not being properly managed by the Chief of Police. The more specific grounds may include, but are not limited to, all or any of the following:" (1) failure to follow policies and procedures, (2) failure to adopt proper policies, (3) failure to administer responses to inquiries, (4) failure to maintain proper personnel, (5) failure to follow council directions, and (6) failure to report accurately to mayor and council. Underneath each of these six headings, McNally provided a one paragraph description of what, specifically, the applicable heading meant.

The Panel introduced Town Ordinance 510 on July 27, 2009 to establish the rules and procedures to aid the Panel in conducting the public hearing. The Panel formally enacted Ordinance 510 on August 11, 2009. Two days later, on August 13, 2009, the Panel began the public hearing, which lasted two days. The Mayor, Deborah Norkavage, was designated as the hearing officer. All six members of the Town Council also attended.[1]

At the start of the public hearing, Sullivan asked the Panel when it would take its oath. Solicitor McNally explained that the Panel, having previously sworn to uphold and follow the Constitution, the laws of Delaware, and the Town Ordinances and Town Charter, would not take a separate oath for purposes of the hearing.

Sullivan then made several motions and objections. First, he moved to dismiss the proceeding because Chapter 48, rather than Ordinance 510, should apply to the hearing. Mayor Norkavage denied this motion. Then, Sullivan moved to call each member of the Panel as a witness in his defense. Mayor Norkavage also denied this motion. Next, Sullivan moved for the recusal of Jaremchuk and Personti on the ground that a previous conflict between them and Sullivan tainted their impartiality. Mayor Norkavage also denied this motion. Finally, Sullivan moved that the Panel consider that the notice Sullivan received was insufficiently specific. Mayor Norkavage denied this motion, as well. Sullivan concluded this exchange by asking the Panel to keep his objections open and outstanding until the completion of the presentation of evidence.

After this procedural discussion, the parties made opening statements. Then, four witnesses testified: (1) Vincent Barbone, a partner in the accounting firm of Haggerty & Haggerty, for the Town of Elsmere, (2) John Giles, the Town Manager for Elsmere, (3) Sullivan, in his own defense, and (4) acting Police Chief Stephen Smith, for Elsmere in rebuttal. Sullivan relevantly testified:

> Jaremchuk asked me for a personal favor, that his daughter's boyfriend had applied to the Elsmere Police Department or was going to apply to the Elsmere Police Department.
>
> . . .
>
> I acknowledged that, yes, I did see that and we would give [him] a good look, he seemed like a good guy.
>
> . . .
>
> At the conclusion of ranking . . . the applicants, . . . Councilman Jaremchuk's daughter's boyfriend, [ ] had ranked fourth overall.

1. These members are: John Jaremchuk (First District), Steven Burg (Second District), Thomas Novak, Jr. (Third District), Charles McKewen (Fourth District), Joann I. Personti (Fifth District), and John Pasquale (Sixth District).

I advised my staff that I was going to call the Councilman and give him the news as a courtesy call [because there were only two openings available at that time].

. . .

. . . [Jaremchuk] said, you MF'ers, I knew you were going to do this. I asked you for a personal favor and you screw me like this. I said, first off, I don't know why you're talking to me like this. And he said, let me tell you something. You're F'ing done here. I was like, whoa, whoa, whoa. And this went on for quite some time.

. . .

During [the conversation], [Jaremchuk] repeatedly told me, you're done here. And I said, at the end of it, I said are you threatening me? And he said, you take it any way you want. But remember how I vote, [Councilwoman Personti] follows.

Sullivan also testified that after this incident, his professional relationship with Jaremchuk went from "a good working relationship to no working relationship," and that he had tried to inform the Panel of this incident at the February 12 executive session, but Jaremchuk had called him a liar.

After the parties made closing arguments, the Panel deliberated for about two and one half hours. When the Panel returned, Councilman Novak moved to resolve that the evidence proved five charges against Sullivan which, when taken together, constituted cause for Sullivan's termination. The Panel voted on the following five charges:

1. Liam Sullivan was insubordinate by opposing a proposed charter amendment and his testimony as to why he opposed the charter amendment is not credible or a proper justification.
2. Liam Sullivan backdated a policy to pay sick leave to a departing officer who was not entitled to that payment and his explanation for why he did so is not credible.
3. Liam Sullivan failed to correct the 2009 defects of fiscal controls documented in December 2008 by the auditor.
4. Liam Sullivan adopted the policies of the Elsmere Police Department without council's approval, including some policies that were sloppy and contrary to the town charter, and his claim that these policies were not approved by him is not credible.
5. Liam Sullivan failed to appropriately respond to inquiries on a Request Tracker and his explanation that he did not understand his responsibilities is not a credible or justifiable excuse.

The Panel unanimously voted that the evidence substantiated charges 1, 2, 4, and 5, and voted 5–2 that the evidence substantiated charge 3.[2] Before adjourning, the Panel instructed Sullivan to return his badge and all his equipment to the town.

Sullivan appealed his termination to the Superior Court. For purposes of this appeal, the Superior Court relevantly concluded:

In *The Town of Cheswold v. Vann*, the Delaware Supreme Court found that "[w]ithout specific evidence to the contrary, the presumption that the Town Council acted impartially must be applied." In the case *sub judice*, Sullivan's testimony regarding the possible bias of Council member Jaremchuk established a *prima facie* case of bias. The Town of Elsmere did not present any evidence in

---

**2.** Councilmen Burg and Pasquale voted against charge 3.

rebuttal. As a result, the Court finds error in the Council's refusal to direct that Councilman Jaremchuk recuse himself.

However, Sullivan did not establish any bias or prejudice by Councilwoman Personti or the other members of the Council. Jaremchuk's warning that Personti would vote with him is not, standing alone, evidence of partiality. Jaremchuk's statement is not sufficient to rebut the presumption that Personti acted impartially.

The findings of the Council are supported by votes of 7 to 0 for Counts 1, 2, 4, and 5; and 5 to 2 for Count 3. The procedures for the due process hearing do not require a unanimous vote. Ordinance 510 requires that a motion "be made regarding the action to be taken in this matter."

The Charter of Elsmere provides that "motions shall be valid upon the affirmative vote of a majority of members of the Council present." The Charter also states that the "Chief of Police may be removed from office upon an affirmative vote of five (5) members of the sitting council voting in favor of removal. . . ." Even assuming Councilman Jaremchuk's vote was invalid, Counts 1, 2, 4, and 5 were found by a vote of 6 to 0. Only the vote on Count 3 (4 to 2) would fail to remove Sullivan. Therefore, the Court finds that the Town garnered sufficient votes to remove Sullivan from office on at least four out of five Counts.[3]

The Superior Court judge found no merit to Sullivan's claims and affirmed the Panel's judgment. Sullivan now appeals the Superior Court's judgment and makes three primary arguments: (1) the Superior Court erred in holding that the votes of the remaining Panel members could cure the Panel's unlawful failure to recuse a biased member, (2) the Superior Court erred in affirming the Panel's failure to provide Sullivan with the protections of Chapter 48, and (3) the Superior Court erred in concluding that the Panel provided Sullivan with sufficient notice of the grounds for the charges against him at the public hearing.

After oral argument before a panel, we directed the parties to file supplemental memorandums to address the following two issues:

(1) Whether the absence of a cross-appeal precludes consideration of Appellee's argument that sufficient facts were not presented to the [Panel] to support recusal; and

(2) If a councilman that should have been disqualified participated in the proceedings, was that error reversible or harmless?

The parties submitted their memorandums and we now decide the case without additional oral argument.

## II. STANDARD OF REVIEW

When reviewing a decision to terminate a police chief, we use the standard of review for appeals from decisions of administrative agencies.[4] Accordingly, we review the Panel's decision "to determine whether [the Panel] acted within its statutory authority, whether it properly interpreted and applied the applicable law, whether it conducted a fair hearing and whether its decision is based on sufficient substantial evidence and is not arbitrary."[5]

---

**3.** *Sullivan v. Mayor and Council of Town of Elsmere,* 2010 WL 2802420, at *4 (Del.Super. July 15, 2010).

**4.** *Vann v. Town of Cheswold,* 945 A.2d 1118, 1121 (Del.2008).

**5.** *Avallone v. State/Dept. of Health & Soc. Servs.,* 14 A.3d 566, 570 (Del.2011) (quoting

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] We review errors of law, as well as questions of statutory interpretation, *de novo.*[7]

## III. ANALYSIS

On appeal, Sullivan argues that the Superior Court erred by holding that the Panel's failure to disqualify Jaremchuk could be cured by the votes of the remaining Panel members. Elsmere argues in response that the Superior Court correctly ruled that Jaremchuk's potential bias—which it disputes—in any event does not rebut the presumption of impartiality for the remaining Panel members. To resolve this claim, we must address two issues. First, we must address whether the absence of a cross-appeal precludes our consideration of Elsmere's argument that Sullivan presented insufficient facts to the Panel to support recusal. This first issue yields three possible outcomes: (1) because Elsmere did not cross-appeal, we cannot consider its factual argument, (2) even though Elsmere did not cross-appeal, we can consider its factual argument, but we disagree with that argument, or (3) even though Elsmere did not cross-appeal, we can consider its factual argument, and we agree with it. If our consideration of this first issue leads to outcome (3), our inquiry is complete. If our consideration of this first issue leads to outcome (1) or (2), however, then we must address a second issue—namely, whether the error in failing to disqualify Jaremchuk was reversible or harmless.

Specifically, Sullivan contends that Elsmere may not now argue that he presented insufficient facts to the Panel to support recusal because Elsmere failed to file a cross-appeal regarding the Superior Court judge's conclusion that Sullivan's testimony constituted a *prima facie* case of bias. In support, Sullivan relies on two related legal concepts: (1) the "cross-appeal rule," as explained by the United States Supreme Court in *Greenlaw v. United States,*[8] and (2) the "law of the case" doctrine that this Court has recognized in many cases, including *Weedon v. State*[9] and *Scharf v. Edgcomb.*[10]

In *Greenlaw,* the United States Supreme Court explained the nature of the "cross appeal rule," but declined to define its parameters with precision:

> The cross-appeal rule, pivotal in this case, is both informed by, and illustrative of, the party presentation principle. Under that unwritten but longstanding rule, an appellate court may not alter a judgment to benefit a nonappealing party. This Court, from its earliest years, has recognized that it takes a cross-appeal to justify a remedy in favor of an appellee.
>
> Courts of Appeals have disagreed, however, on the proper characterization of the cross-appeal rule: Is it "jurisdictional," and therefore exceptionless, or a "rule of practice," and thus potentially subject to judicially created exceptions? Our own opinions contain statements supporting both characterizations.[11]

*Hopson v. McGinnes,* 391 A.2d 187, 189 (Del. 1978)).

**6.** *Id.* (quoting *Person–Gaines v. Pepco Holdings, Inc.,* 981 A.2d 1159, 1161 (Del.2009)).

**7.** *Id.*

**8.** 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008).

**9.** 750 A.2d 521 (Del.2000).

**10.** 864 A.2d 909 (Del.2004).

**11.** *Greenlaw,* 554 U.S. at 244–45, 128 S.Ct. 2559 (citations omitted).

The "law of the case" doctrine similarly may preclude consideration of issues that have been decided by a lower court. For example, in *Scharf v. Edgcomb,* we reviewed a Court of Chancery decision that involved two determinations in appellant's favor: (1) that the appellant proved the elements necessary to support a claim for indemnification and (2) that appellant's claimed attorneys' fees and expenses were reasonable.[12] Nevertheless, the Vice Chancellor ultimately determined that the appellant's indemnification claim was barred by the applicable statute of limitations.[13] On appeal, the appellant challenged the statute of limitations determination. We reversed, noting in our opinion that the appellee could not challenge the Vice Chancellor's determinations on the two merits issues because "[n]o cross-appeal was filed ... and th[ose] holding[s] [became] the law of th[e] case." [14]

In this case, Elsmere did not file a cross-appeal to challenge the Superior Court judge's conclusion that:

> Sullivan's testimony regarding the possible bias of Council member Jaremchuk established a *prima facie* case of bias. The Town of Elsmere did not present any evidence in rebuttal. As a result, the Court finds error in the Council's refusal to direct that Councilman Jaremchuk recuse himself.[15]

Consequently, the Superior Court judge's determination that Sullivan's testimony established a *prima facie* case on the part of Jaremchuk—like the Vice Chancellor's de-

terminations in *Scharf*—became the law of this case.

The "law of the case" doctrine includes two exceptions. First, the doctrine does not apply where a previous ruling was "clearly in error" or if there was an important change in circumstances with respect to the factual basis for issues previously decided.[16] Also, the doctrine does not apply if there is sufficient "equitable concern of preventing injustice" to overcome the doctrine.[17] We believe that nothing in this record suggests that the Superior Court judge's determination was "clearly in error" or that "the equitable concern of preventing injustice" overcomes the "law of the case" doctrine on these facts.

The record facts here also implicate the "cross-appeal rule." Elsmere had an opportunity to rebut Sullivan's testimony establishing a *prima facie* case of Jaremchuk's bias. Elsmere did not do that, even though its newly adopted procedural rules provided for rebuttal.[18] Nor did Elsmere file a cross-appeal from the Superior Court judge's bias determination.

The facts of this case do not require us to define the precise parameters of the "law of the case" doctrine or the "cross appeal rule." For even if Elsmere were not precluded from challenging the Superior Court's determination, based on either or both doctrines, Elsmere, having presented no rebuttal evidence below, could only argue that Sullivan's testimony did not establish Jaremchuk's bias. Al-

---

12. *Scharf,* 864 A.2d at 914–15.

13. *Id.* at 915.

14. *Id.*

15. *Sullivan,* 2010 WL 2802420, at *4

16. *Weedon,* 750 A.2d at 527.

17. *Id.* at 528.

18. Ordinance 510 provided in relevant part: "Rebuttal Testimony. Following the presentation of the Chief of Police's defense, the Town shall be provided a brief opportunity to present rebuttal testimony from witnesses and/or other rebuttal evidence...."

though the law presumes that Jaremchuk carried out his duties with honesty and integrity,[19] Sullivan's testimony rebutted that presumption with evidence of conduct suggesting personal bias. Indeed, it is difficult to read Jaremchuk's alleged comments, including "You're F"ing done here," any other way. Jaremchuk's alleged comments reflect that he had prejudged the merits of Sullivan's termination proceeding. Even if Jaremchuk was not biased in fact, Sullivan's testimony, which the Panel did not rebut, creates an appearance of bias sufficient to cause doubt about Jaremchuk's impartiality because an objective observer viewing the circumstances would conclude that Jaremchuk could not or would not participate fairly or impartially in Sullivan's hearing.[20]

■ Having concluded that the Panel should have recused Jaremchuk, we must address whether its failure to recuse him was reversible or harmless error. If the Panel had disqualified Jaremchuk, it would have approved four of the five charges against Sullivan by a 6–0 vote. Even though the fifth charge would have failed to garner the five votes required to serve as a basis for Sullivan's termination, the Superior Court judge determined that Elsmere had garnered sufficient votes to remove Sullivan from office on the other four charges.

■ If Sullivan's hearing had been a criminal proceeding, our review would be straightforward. As we have explained, "if only one juror is improperly influenced, a defendant in a criminal case is denied his Sixth Amendment right to an impartial jury."[21] Unlike a criminal proceeding, however, in which the State must garner a unanimous verdict to convict,[22] Sullivan's hearing only required five of the seven possible Panel votes to establish a charge.[23]

■ A "fair trial in a fair tribunal is a basic requirement of due process" that "applies to administrative agencies as well as to courts."[24] Whether one allegedly partial member of a multi-member tribunal taints the entire tribunal's decision and deprives a party of due process appears to be an issue of first impression for this Court. Many other authorities have addressed this question, however, and the answer has been remarkably consistent.

The United States Court of Appeals for the Ninth Circuit, for example, has held that:

> [T]he fact that the tribunal's vote was unanimous does not mean that the bias of one member had no effect on the result.
>
> . . . [W]here one member of a tribunal is actually biased, or where circumstances create the appearance that one member is biased, the proceedings violate due process. The plaintiff need not demonstrate that the biased member's vote was decisive or that his views influenced those of other members. Whether actual or apparent, bias on the part of a

---

19. *See Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Town of Cheswold v. Vann,* 947 A.2d 1123, 2007 WL 1201716, at *2–3 (Del.2007) (ORDER).

20. *See Fritzinger v. State,* 10 A.3d 603, 611 (Del.2010).

21. *Styler v. State,* 417 A.2d 948, 951–52 (Del. 1980).

22. Del. Const. art. 1, § 4; *Stevenson v. State,* 709 A.2d 619, 634 (Del.1998); Super. Ct. R. 31(a) ("The verdict shall be unanimous. It shall be returned by the jury to the judge in open court.").

23. *See* Charter of Elsmere, § 702(2)(iv).

24. *Withrow,* 421 U.S. at 46, 95 S.Ct. 1456 (citations omitted).

single member of a tribunal taints the proceedings and violates due process.[25]

In that same opinion, for support, the court quoted from a concurring opinion by Justice Brennan:

> [W]hile the influence of a single participant in this process can never be measured with precision, experience teaches us that each member's involvement plays a part in shaping the court's ultimate disposition. The participation of a judge who has a substantial interest in the outcome of a case of which he knows at the time he participates *necessarily* imports a bias into the deliberative process. This deprives litigants of the impartiality that is the fundamental requirement of due process.[26]

Many other courts have held similarly.[27] And, a respected treatise touts the same principle.[28]

The prevailing perspective is that the bias of one member of a multi-member adjudicatory tribunal taints the entire tri-bunal's decision and deprives the party subject to the tribunal's judgment of due process. This is true whether or not that biased member's vote is necessary to the judgment. With these cases and principles in mind, we conclude that the unrebutted *prima facie* showing of bias on the part of Jaremchuk tainted the Panel and deprived Sullivan of due process. Accordingly, Sullivan is entitled to a new hearing without Jaremchuk's participation.

We note that in the event the composition of the Panel is not changed, it is impossible to erase any influence that Jaremchuk's bias or appearance of bias may have had on the rest of the Panel. We are not unmindful that one might find it difficult to conceive how another hearing before the Panel—assuming the same members—will yield a different result. Nevertheless, absent evidence to the contrary, we presume that the next Panel's members will be aware of this Opinion and will perform their duties with honesty and integrity.[29] In any event, our duty is to

---

**25.** *Stivers v. Pierce*, 71 F.3d 732, 747–48 (9th Cir.1995).

**26.** *Id.* at 747 (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 831, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (Brennan, J., concurring)).

**27.** *See, e.g., Hicks v. City of Watonga*, 942 F.2d 737, 748 (10th Cir.1991) ("[I]f [one tribunal member] is found to have been biased when she cast her vote on [the employee's] dismissal, her presence will have tainted the tribunal and violated [the employee's] due process rights.") (citing *Antoniu v. SEC*, 877 F.2d 721 (8th Cir.1989)); *Cinderella Career & Finishing Schools, Inc. v. F.T.C.*, 425 F.2d 583, 592 (D.C.Cir.1970) ("Litigants are entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured.") (quoting *Berkshire Employees Ass'n of Berkshire Knitting Mills v. NLRB*, 121 F.2d 235, 239 (3d Cir.1941)); *Am. Cyanamid Co. v. F.T.C.*, 363 F.2d 757 (6th Cir.1966) ("The result of the participation of Chairman Dixon in the decision of the Commission is not altered by the fact that his vote was not necessary for a majority."); *Hopkins v. Mayor & Council of City of Wilmington*, 600 F.Supp. 542, 553 (D.Del.1984) ("The fact that Regan's vote was not essential to a majority is immaterial, for the parties agree that the principle of [*Berkshire*] would control."); *Kiger v. Albon*, 76 Ohio App.3d 301, 601 N.E.2d 603, 607 (1991) ("[W]e adopt the reasoning of the *American Cyanamid* case and find [the] participation [of a biased tribunal member whose vote was not necessary to the required majority] to be a fundamental violation of due process and inherently prejudicial.").

**28.** 32 Charles Alan Wright and Charles H. Koch, Jr., Federal Practice and Procedure § 8258 (1st ed.) ("The bias of one member of a multi-person tribunal may compromise the whole body.").

**29.** *See Withrow*, 421 U.S. at 47, 95 S.Ct. 1456 ("[Claims of bias] must overcome a presumption of honesty and integrity in those serving as adjudicators...."); *Vann*, 2007 WL

ensure that Sullivan, and all similarly situated, receive due process—a fundamental pillar of our judicial system.

## IV. CONCLUSION

Sullivan's testimony established a *prima facie* case of bias by Councilman Jaremchuk, which Elsmere failed to rebut. Whether or not the "law of the case" doctrine or the "cross appeal rule" prevents Elsmere from challenging the finding of Jaremchuk's bias at this stage, Jaremchuk's alleged conduct created an unlawful appearance of bias, if not actual bias, that warranted his recusal. The Panel's error by not disqualifying Jaremchuk, in accord with fundamental principles of due process, tainted the Panel's votes on the charges against Sullivan and deprived him of due process. That is so even though the votes of the rest of the panel, independent of Jaremchuk, were sufficient to terminate Sullivan's employment. Sullivan is entitled to a new hearing before the Panel without Jaremchuk's participation. Because this ground for reversal is independently sufficient, we decline to address Sullivan's other arguments. The judgment of the Superior Court is reversed and this case is remanded for proceedings consistent with this Opinion.

1201716, at *2 ("[I]n order to succeed on his claim that he was denied due process on the basis that the Town Council was biased, Vann must point to specific facts in the record that rebut the presumption of honesty and impartiality.").