**Kenneth SLETTEN, an individual and former Trustee of The Navellier Series Fund, Plaintiff,**

v.

**THE NAVELLIER SERIES FUND, a Delaware Business Trust; and the Aggressive Small Cap Equity Portfolio of the Navellier Performance Funds, a Delaware Business Trust, and Does 1–20, Defendants.**

**No. CV–N–00–0167–LRH(VPC).**

United States District Court,
D. Nevada. .

June 20, 2003.

Order Correcting Opinion June 27, 2003.

See also: 262 F.3d 923.

Robert C. Madox, Robert C. Maddox &
Associates, Reno, NV, Jonathan Marvin,

**1070**

Leigh Kirmsse, Ralph Alldredge, Emeryville, CA, for Plaintiff.

Gayle Kern, Reno, NV, Samuel Kornhauser, San Francisco, CA, for Defendants.

## DECISION

HICKS, District Judge.

The above-entitled cause came on regularly for bench trial before the undersigned on June 3 and 4, 2003. Plaintiff KENNETH SLETTEN ("SLETTEN") appeared in person and by Ralph C. Alldredge, Esq., Leigh A. Kirmsse, Esq., and Jonathan P. Marvin, Esq. of Legal Strategies Group, his counsel. Defendants appeared through one of their officers and trustees. Samuel Kornhauser, Esq. of the Law Offices of Samuel Kornhauser, and Gayle A. Kern, Esq. of Kern & Rosenauer, Ltd. appeared as defendants' counsel. Testimony and other evidence were presented to the Court and the matter was argued and submitted.

In this action, SLETTEN seeks indemnity from defendants for the attorneys fees and costs incurred by SLETTEN in the defense of that action brought by defendants and others in *Navellier v. Sletten,* 262 F.3d 923 (9th Cir.2001), *cert. denied sub nom., McLachlan v. Simon,* 536 U.S. 941, 122 S.Ct. 2623, 153 L.Ed.2d 806 (June 24, 2002) (hereafter "the underlying litigation"). The factual and procedural background of the underlying litigation is well described in *Navellier v. Sletten,* 262 F.3d at 932–934.

This litigation and the underlying litigation focuses upon the Navellier Series Fund ("Fund"), a Delaware mutual fund that was created in 1993. The investment adviser for the Fund was Navellier Management, Inc. ("NMI") and there were three independent trustees for the Fund, one of whom was plaintiff SLETTEN. There were also two interested trustees, one of whom was Louis G. Navellier, President of NMI.

The Fund held assets of a value in excess of $50 million in 1996, when differences arose between the independent trustees, NMI and the interested trustees. The differences escalated over time and the independent trustees decided to change the Fund's investment adviser upon the expiration of NMI's contract term in March 1997. The trustees voted not to renew NMI's contract, voted to replace NMI with another investment adviser, Massachusetts Financial Services ("MFS"), and subsequently voted to remove Navellier and the other interested trustee in April 1997. The change in investment adviser required approval by a two-third's vote of the plan's shareholders within 120 days of the change pursuant to the Investment Company Act of 1940 ("ICA"). The shareholder vote was conducted on May 23, 1997, and failed to meet the two-third's approval threshold. Thereafter, SLETTEN and the other independent trustees agreed to resign and management of the Fund was returned to NMI.

In February 1998, Navellier and a group of the Fund's shareholders brought a class action complaint in federal district court in northern California against SLETTEN and the other two independent trustees, MFS, and the legal counsel who had been retained by the independent trustees. The complaint alleged claims under the ICA and Delaware law for (1) breach of fiduciary duty, and (2) waste and intentional interference with prospective economic advantage and sought damages in excess of $35 million.

The independent trustees answered the suit and filed counterclaims for indemnity, and SLETTEN also filed a counterclaim for breach of contract and bad faith. Lengthy and exhaustive discovery was conducted, extensive motion practice was

presented and the litigation was acrimonious. The trial court refused to certify the action as a class action, dismissed a number of claims and allowed the litigation to proceed to trial against the independent trustees upon plaintiffs' claims for breach of fiduciary duty and waste and on the independent trustees' counterclaims for indemnification. At trial, the independent trustees moved to dismiss their claims for indemnity without prejudice and the trial court granted the motion. Plaintiff SLETTEN's claim for indemnity is the subject of this litigation.

Jury trial on the underlying litigation commenced on June 21, 1999, and lasted approximately three weeks. The jury returned unanimous verdicts for SLETTEN and the other independent trustees on all claims.[1] Thereafter, the Navellier plaintiffs filed motions for judgment as a matter of law and for a new trial, which were denied by the trial court. The judgment was subsequently appealed to the Ninth Circuit which affirmed the trial court in all material respects in August 2001.

The Navellier plaintiffs then petitioned for writ of certiorari to the United States Supreme Court that was denied by the Supreme Court in June 2002. They then petitioned for rehearing and that was denied in August 2002.

In this action, SLETTEN seeks recovery of his attorneys' fees and costs incurred in the underlying litigation and also seeks recovery of his attorneys' fees and costs incurred in this litigation.

**Partial Summary Judgment.**

On September 17, 2002, this Court granted partial summary judgment in favor of SLETTEN and ruled that under the Fund's Declaration of Trust and Fund Indemnification Agreements, plaintiff SLETTEN and Donald Simon ("SIMON"), who brought a similar action to SLETTEN's, were "entitled to indemnification for attorneys' fees and costs incurred in the underlying litigation and in the present actions seeking indemnification." Page 6, Order (# 140).[2] SLETTEN and SIMON had previously been able to recover some of their attorney fees and costs through Fund-related insurance coverage with the Chubb Group of Insurance Companies ("Chubb"), which had provided insurance coverage to MFS.[3] In its Order granting

---

1. The defense verdict was returned in favor of independent trustees, Kenneth Sletten and Donald Simon. A third independent trustee, Lawrence Bianchi, settled during the course of the trial.

2. The Declaration of Trust for the Fund provides, in pertinent part, that:

 [T]he **Trust shall indemnify** each of its Trustees ... **against all liabilities and expenses** (including amounts paid in satisfaction of judgments, in compromise, as fines and penalties, **and as counsel fees**) **reasonably incurred** by him in connection with the defense or disposition of any action, suit or other proceeding, whether civil or criminal, in which he may be involved or with which he may be threatened, while in office or thereafter, by reason of his being or having been a trustee.... (Emphasis added.)

(Declaration of Trust of the Navellier Series Fund, May 6, 1993), § 10.02. The Fund's Trust Indemnification Agreement provides:

 Trustee shall not be liable to the Fund, or any of the Fund's investors, for any error of judgment or mistake of law or fact, for any act or omission by Trustee or for any losses sustained by the Fund, or the Fund's investors. The **Fund agrees to indemnify and hold harmless** Trustee against any claim made by any of the Fund's investors for any error in judgment or mistake in law or fact, for any act or omission by Trustee, or for any losses sustained by Trustee or the Fund's investors .... (Emphasis added.)

3. NMI discontinued insurance coverage of the trustees at some time during the course of the dispute between the independent trustees and NMI. The independent trustees had no Fund-related insurance coverage until NMI was

partial summary judgment, this Court ruled that the plaintiffs' indemnification claims were to be reduced by the amount of the payments from Chubb. Although most of SIMON's fees and costs were paid by Chubb, the same was not true with plaintiff SLETTEN. A little over one-third of his fees and costs were paid by Chubb and a significant amount of the remainder were paid by his homeowner's insurance provider, Fireman's Fund Insurance Company ("Fireman's Fund").

The evidence presented to the Court reflects, and the Court so finds, that plaintiff SLETTEN incurred a total of $1,863,344.87 in attorneys' fees and costs in the defense of the underlying litigation. Of that amount, $663,868.90 was reimbursed by Chubb. The balance of $1,199,475.97 was paid by SLETTEN personally, much of which was reimbursed to him by Fireman's Fund.

**Analysis.**

**Choice of Counsel.**

In the early stages of the litigation SLETTEN and the other two independent trustees were represented by the law firm of Brobeck, Phleger & Harrison LLP in San Francisco. In the summer of 1998, SLETTEN decided he needed separate counsel and he retained Ralph C. Alldredge of the Legal Strategies Group to represent him. He did so out of concern about his personal exposure because he was substantially wealthier than the other defendants, he wanted the benefit of counsel dedicated to his defense alone and there were potential conflicts of interest among the three trustees. Defendants have challenged the fees and costs charged by SLETTEN's counsel.

■ Based on the agreements between the parties, the Court finds that there was

no limitation on SLETTEN as to his choice of counsel. A reasonable expectation by a trustee would be that a trustee was entitled to choose competent counsel in an action brought against him involving a claim arising from his duties as a trustee. Such an expectation would be particularly reasonable when one considers that it was the Fund that brought the action in this case.

The evidence before the Court was that Navellier and the other shareholders sought compensatory damages in excess of $35 million from SLETTEN plus punitive damages as well. SLETTEN is a man of significant personal wealth and was substantially wealthier than the other defendant trustees. He was also in his late 60's and was not in good physical health. The claims against him, if successful, would have devastated him financially and may well have jeopardized his health.[4] Under all of these circumstances, it was abundantly reasonable for SLETTEN to seek personal counsel and to choose competent counsel who he knew would provide undivided attention and commitment to his defense.

■ As decided in the Court's Order granting partial summary judgment (#140), Delaware law applies to this dispute. In *Chamison v. HealthTrust, Inc.— Hospital Co.*, 735 A.2d 912 (Del.Ch.1999), previously cited by this Court in its Order granting partial summary judgment, the Delaware Court discussed a litigant's right to choose his own counsel and provided guidance on how Delaware courts should approach the application of an indemnification agreement.

Unlike this case, the parties' indemnification agreement in *Chamison* contained a

---

replaced by MFS as investment adviser in the spring of 1997.

**4.** Chubb Insurance had denied that SLETTEN was entitled to coverage and had reserved its rights to contest coverage.

counsel selection provision. Chamison refused to accept any of the attorneys selected by HealthTrust, the indemnitor. Rather, Chamison decided to retain the firm that had already been working on his case. Notwithstanding the counsel selection provision, the Court held that HealthTrust was obligated to pay Chamison's attorney fees. As stated by the court:

[B]ecause HealthTrust's indemnification obligation is contractual-and not statutory-in origin, my analysis begins with an acknowledgment that the HealthTrust indemnification provision included a valid and enforceable counsel selection provision. Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract. As such, a party to a contract has made an implied covenant to interpret and to act reasonably upon contractual language that is on its face reasonable. This implied covenant is a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain. It requires the Court to extrapolate the spirit of the agreement from its express terms and based on that "spirit," determine the terms that the parties would have bargained for to govern the dispute had they foreseen the circumstances under which their dispute arose. The Court then implies the extrapolated term into the express agreement as an implied covenant and treats its breach as a breach of the contract. The implied covenant cannot contravene the parties' express agreement and cannot be used to forge a new agreement beyond the scope of the

written contract. Despite these restrictions, Delaware courts apply this legal theory only in narrow circumstances.

*Chamison,* 735 A.2d at 920–21.

Applying the canons of contract interpretation discussed above, the Court finds that the parties would have reasonably expected that the trustees would be able to choose competent counsel in the event of circumstances such as those found in the present case. SLETTEN chose Ralph Alldredge, Esq. and his law firm, Legal Strategies Group, and the court finds that Alldredge and his firm were experienced in complex litigation and well qualified. Moreover, the agreements between the parties did not contain a counsel selection provision. SLETTEN's choice of counsel was clearly reasonable.

**Reasonableness of Fees.**

 In Delaware, the amount of an attorneys' fee award is a matter of discretion by the Court. *Krinsky v. Helfand,* 156 A.2d 90 (Del.Supr.1959). That discretion is guided by a number of factors. However, the primary consideration is generally the result achieved through the litigation. *Smith v. Van Gorkom,* et al., Del. Ch., Civil Action No. 6342. Other factors include the time and effort expended by counsel, the complexity of the litigation, the standing and ability of counsel, and the contingent nature of the fee arrangement. *Sugarland Industries, Inc. v. Thomas,* 420 A.2d 142 (Del.Supr.1980). Neither the "lodestar" nor the "Lindy" approach is followed in Delaware. *Id.*

The Court has reviewed the evidence concerning SLETTEN's attorneys' fees and costs and concludes that they are reasonable and they were reasonably incurred.[5]

---

5. It is worth noting, that although the parties disagree over whether the fees incurred by SLETTEN are reasonable, the Indemnification Agreement does not expressly require

such fees to be reasonable for indemnification purposes. "Fund agrees to indemnify ... for any losses sustained by trustee." Trust Indemnification Agreement of May 6, 1993.

The litigation was filed as a class action sounding in contract and tort theories, was headed for jury trial at all times and, ultimately, the Ninth Circuit and the United States Supreme Court. The results achieved by the SLETTEN defense team speak for themselves. Class certification was defeated, major victories were achieved upon the motion practice before the trial court and, most importantly, a three week jury trial resulted in a defense verdict, completely favorable to SLETTEN. The effectiveness of the SLETTEN defense effort continued through the opposition to the appeal to the Ninth Circuit and through the opposition to the petition for certiorari to the Supreme Court.

The Court finds that the hourly fees charged by SLETTEN's counsel were reasonable and within the range of hourly rates that would normally be expected to be charged by competent counsel in complex litigation. The Court also finds that there was nothing about the work provided by SLETTEN's counsel that was unnecessarily duplicative of work provided by other counsel. Furthermore, the hours expended in SLETTEN's defense were neither excessive nor did they involve unnecessary work.

The only other trustee who was required to defend the underlying litigation through trial, the Ninth Circuit and the United States Supreme Court was SIMON. Attorneys fees and costs charged by the firm that represented SIMON were in excess of $2,167,000.[6] Moreover, evidence presented to the Court indicated that the attorneys' fees and costs incurred on behalf of Navellier and the other unsuccessful plaintiffs exceeded $2 million.

■ SLETTEN's right of recovery is founded in his contractual rights of indemnity from the Fund. The indemnity counterclaim in the underlying litigation is the precursor to this litigation and is compensable through this litigation. However, the counterclaims based upon claims of breach of contract and breach of the covenant of good faith and fair dealing fall outside of SLETTEN's indemnity rights. The attorneys fees and costs associated with those counterclaims are a small portion of the total attorneys fees and costs which were incurred in the underlying litigation and the Court finds that a reasonable allocation would be $90,000, which represents approximately 7.5% of the fees incurred by SLETTEN after adjustment for the Chubb reimbursement.

The Court, therefore, concludes that SLETTEN is entitled to recover attorneys' fees and costs incurred in the underlying litigation in the amount of $1,109,475.97 determined from the total SLETTEN attorneys' fees and costs of $1,863,344.87 less $90,000 allocable to the noncompensable portion of the SLETTEN counterclaims, less $663,868.90 paid by Chubb.

■ Although SLETTEN's counsel argues that no offset of the Chubb payments should be applied because of the risk of Chubb seeking reimbursement of those sums, the Court is not persuaded that Chubb has such a legal right. SLETTEN has not proved that such a claim by Chubb is either intended or enforceable.

■ With regard to the reimbursements to SLETTEN by Fireman's Fund as a result of his homeowner's insurance coverage, defendants are entitled to no credit for such payments. As expressed in the

---

**6.** SIMON was represented by the Brobeck firm in San Francisco, California. From January through June 1998, the firm represented SLETTEN as well as SIMON. The underlying litigation spanned from February 1998 through August 2002.

Court's previous rulings, the Fund was obligated by its own contractual agreements to indemnify each of its trustees for all fees and costs reasonably incurred. Although the Court has found that the Fund is entitled to a credit for payments made by insurance carriers associated with the Fund, there are no grounds in either law or equity under the facts of this case which would warrant a windfall to the Fund by virtue of the collateral insurance benefits paid to SLETTEN through his homeowner's coverage.

## Prejudgment Interest.

■■■■ "In diversity actions brought in federal court a prevailing plaintiff is entitled to pre-judgment interest at state law rates while post-judgment interest is determined by federal law." *In re Cardelucci,* 285 F.3d 1231, 1235 (9th Cir.2002). Delaware law applies to this case. Under Delaware law, prejudgment interest is awarded as a matter of right. *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 826 (Del.1992). Such interest is to be computed from the date payment is due. *Id.* Where, as here, liability accrues over time, interest is calculated from the date each payment was due. *Id.* Therefore, Plaintiff is entitled to prejudgment interest on each installment he paid, from the date on which he paid it.

By statute, "[w]here there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due." 6 Del.C. § 2301 (2002). Plaintiff SLETTEN has provided the Court with the dollar amount of prejudgment interest, calculated at the legal rate, pursuant to Delaware law. The total amount of prejudgment interest through June 20, 2003, is $467,181.69. With a 7.5% reduction allowable to the nonindemnity counterclaims asserted by SLETTEN, the Court awards prejudgment interest in the amount of $432,143.07.

## Attorneys Fees and Costs Incurred in This Action.

■■■ The Declaration of Trust and Trust Indemnification Agreement executed between SLETTEN and the Fund reflect an intent to provide broad indemnity to a trustee who has been sued over any actions taken in his capacity as a trustee. The Declaration of Trust, § 10.02, provides:

The trust **shall indemnify ... against all expenses (including ... counsel fees) reasonably incurred** by [a trustee] in connection with the defense **or disposition of any action,** suit or other proceeding ... **in which he may be involved ... while in office or thereafter, by reason of his being ... a trustee....**

Likewise, in the Trust Indemnification Agreement:

\* \* \* \* \* \*

The fund **agrees to indemnify and hold harmless trustee** against any claim ... or **for any losses sustained by the trustee ....**

The reasonable interpretation of this contract language is that the intention of the parties was that the trustee's right of indemnification include a right to recover for his reasonable attorneys' fees and costs in having to successfully litigate a claim for indemnification.

This concept has been adopted by the courts of Delaware. *See, Stifel Financial Corp. v. Cochran,* 809 A.2d 555 (Del. Supr.2002), which focused upon the scope of indemnification given a trustee under 8 Del.C. § 145(c). Although this Court did not decide whether § 145 applies in this action because the Declaration of Trust and Trust Agreements were so clear, the

sentiment of complete indemnification is reflected in § 145.

The *Stifel* court noted that "without an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete. There is no compelling reason to deprive claimants of full indemnification, in accordance with the policy of § 145." The court further noted other good policy reasons for its decision, including:

Allowing indemnification for the expenses incurred by a director in pursuing his indemnification rights gives recognition to the reality that the corporation itself is responsible for putting the director through the process of litigation. Further, giving full effect to § 145 prevents a corporation from using its "deep pockets" to wear down a former director, with a valid claim to indemnification, through expensive litigation. Finally, corporations will not be unduly punished by this result.

*Stifel,* 809 A.2d at 561.

The agreements in the present case state that the trustees are entitled to indemnification for *any losses* and *all expenses.* Without awarding SLETTEN the fees incurred in the present litigation his indemnification would be incomplete. The Court, therefore, concludes and reconfirms that SLETTEN is entitled to recover all reasonable attorneys' fees and costs incurred by him in this action. To that end, plaintiff's counsel shall forthwith submit an affidavit authenticating the following:

1. A reasonable itemization and description of the work performed in this action;

2. An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to Local Rules 54–1 through 54–15;

3. A description of any contingent fee agreements which may apply to this action;

4. A confirmation from counsel that no contingent fees will be applied against an award of attorneys' fees incurred in connection with this action (as opposed to the underlying action); and

5. A statement that the fees and costs are reasonable.

Defendants shall have seven (7) calendar days from service on them to file an opposition to the fees and costs claimed by plaintiff in this action and shall set forth the specific charges that are disputed and state with reasonable particularity the basis for such opposition. A reply may thereafter be filed within three (3) calendar days.

The pendency of the award of attorneys' fees and costs to be awarded in connection with this action shall have no effect upon the remaining portions of this decision. When a determination is made concerning the award of attorneys' fees and costs in this action, the total judgment will be increased accordingly.

GOOD CAUSE APPEARING, judgment shall be immediately entered in favor of plaintiff in the amount of $1,109,475.97, representing a net award of attorneys' fees and costs incurred in the underlying litigation of $1,109,475.97, plus prejudgment interest in the amount of $432,143.07 through June 20, 2003. Judgment shall subsequently be entered for the amount of attorney fees and costs to be awarded in this action.

IT IS SO ORDERED.

### *ORDER*

WHEREAS, Plaintiff, through his Emergency Motion for Correction of Decision (# 244), has brought to the Court's attention a typographical error which appeared on page 16 at lines 19–23 of the Court's Decision of June 20, 2003 (# 243), such language is hereby corrected to prop-

erly reflect the Court's Decision: "Judgment shall be immediately entered in favor of plaintiff in the amount of $1,541,619.04, representing a net award of attorneys' fees and costs incurred in the underlying litigation of $1,109,475.97, plus prejudgment interest in the amount of $432,143.07 through June 20, 2003." The Clerk shall enter judgment accordingly.

With regard to the Court's order of May 27, 2003 (# 220), freezing securities or other things of value, with a value of at least $2.7 million, owned by the Aggressive Small Cap Portfolio of the Navellier Performance Funds, currently held by FBR National Bank and Trust of 4922 Fairmont Avenue in Bethesda, Maryland as custodian and agent for Defendants, and

GOOD CAUSE APPEARING, IT IS HEREBY ORDERED that the amount of the asset freeze of $2.7 million is hereby reduced to the amount of $2.5 million upon the grounds that a settlement has been reached in the Simon litigation. The $2.5 million asset freeze in the Sletten case shall continue in effect until superseded by either a satisfaction of judgment, the posting of an appropriate appeal bond guaranteeing payment in lieu of execution pending appeal, or further order of the Court. Defendants shall forthwith deliver a copy of this order to FBR National Bank and Trust and to each officer and director of Defendants.

IT FURTHER APPEARING that Plaintiff's earlier Notice of Motion and Motion to Quash for Protective Order and for Sanctions (196/197/198) have not been addressed on the record, and that such motions are moot by virtue of the completion of trial in this action, such motions are hereby denied without prejudice as moot.

IT IS SO ORDERED.