# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

FRANCIS S. BRANIN, JR.,     :
    :
    Plaintiff,     :
    :
    v.     :     **C.A. No. 8481-VCN**
    :
STEIN ROE INVESTMENT COUNSEL,     :
LLC, STEIN ROE INVESTMENT     :
COUNSEL, INC., and ATLANTIC     :
TRUST GROUP, INC., together d/b/a     :
ATLANTIC TRUST PRIVATE     :
WEALTH MANAGEMENT,     :
    :
    Defendants.     :

## MEMORANDUM OPINION

Date Submitted: April 24, 2015
Date Decided: July 31, 2015

John M. Seaman, Esquire and Steven C. Hough, Esquire of Abrams & Bayliss LLP, Wilmington, Delaware, and Louis P. DiLorenzo, Esquire, Michael I. Bernstein, Esquire, and Michael P. Collins, Esquire of Bond, Schoeneck & King, PLLC, New York, New York, Attorneys for Plaintiff.

Robert J. Katzenstein, Esquire of Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware, and John F. Cambria, Esquire and Daniella P. Main, Esquire of Alston & Bird LLP, New York, New York, Attorneys for Defendants.

NOBLE, Vice Chancellor

Plaintiff Francis S. Branin, Jr. ("Branin" or the "Plaintiff") began working for Defendant Stein Roe Investment Counsel LLC ("SRIC LLC") in 2002. Shortly thereafter, he was sued by his former employer, Bessemer Trust, N.A. ("Bessemer"). After a decade defending against Bessemer's allegations, all claims against Branin were dismissed with prejudice. Plaintiff then sought to enforce a purported indemnification right against Defendants.[1] The Court must now resolve cross-motions for summary judgment, where the fundamental issue is whether Branin's claim for indemnification (for expenditures related to litigation begun in 2002, but not resolved with finality until 2012) is time-barred.

## I. BACKGROUND

A. *Branin Joins SRIC LLC*

Branin resigned from Bessemer on July 12, 2002. He had worked there since late 2000, when he, and seven other principals of an investment management firm, sold to Bessemer all of the firm's assets, included client accounts and related goodwill. In 2001, as his relationship with Bessemer deteriorated, Branin discussed employment opportunities with SRIC LLC, another investment management firm. Switching companies was complicated by his sale of his clients' goodwill to Bessemer. Branin explained to SRIC LLC that Bessemer's

---

[1] Defendants are SRIC LLC, Stein Roe Investment Counsel, Inc. (a successor entity), and Atlantic Trust Group, Inc. (Stein Roe Investment Counsel, Inc.'s parent).

purchase was governed by a New York common law doctrine that prevented him from soliciting his former clients. However, he could provide information to his former clients and accept their business if they approached him.[2] After Branin and SRIC LLC agreed to a compensation agreement, Branin resigned from Bessemer and executed an employment agreement with SRIC LLC.

B. *Bessemer Sues Branin*

Some of Branin's former clients soon followed him to SRIC LLC.[3] Bessemer responded by suing Branin in New York state court on November 22, 2002 (the "New York Action"), charging him with improperly soliciting its clients and impairing its goodwill, in violation of a New York implied covenant. Branin removed the action to federal court. After a decade of litigation, Bessemer unconditionally dismissed, with prejudice, any and all claims against Branin.[4]

---

[2] Branin's contract with Bessemer did not include an express covenant regarding noncompetition or non-solicitation.

[3] At one point, $205 million of the $228 million worth of client assets managed by Branin at SRIC LLC had been managed at Bessemer.

[4] The action was heard in the United States District Court for the Southern District of New York and appealed to the United States Court of Appeals for the Second Circuit. The Second Circuit certified a question of New York law to the New York Court of Appeals. The New York high court's answer to the certified question was favorable to Branin's position.

## C. *Branin's Quest for Indemnification*

After successfully defending against the New York Action, Branin turned to this Court for an order requiring Defendants to indemnify him for the expenses he had incurred. His purported right to indemnification arises from and is governed by SRIC LLC's Amended and Restated Limited Liability Company Operating Agreement, dated January 2, 2001, as amended (the "Operating Agreement").[5] The parties debate which version of the Operating Agreement applies.

When the events underlying the New York Action occurred, and when Bessemer filed suit, the Operating Agreement's indemnification provision was set forth in the First Amendment to the Operating Agreement (the "First Amendment"):

> Indemnification. No Member, Manager or employee of the Company shall be liable to the Company, any other Member or any other Person who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Member, Manager or employee in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Member, Manager or Employee by this Agreement, except that this sentence shall not apply to any Member, Manager or employee of the Company in respect of any such loss, damage or claim incurred by reason of such Person's gross negligence or willful misconduct. To the full extent permitted by applicable law, each Member, Manager or employee of the Company shall be entitled to indemnification from the Company for any loss,

---

[5] Transmittal Aff. of John F. Cambria, Esq., Nov. 24, 2014 ("Cambria Aff.") Ex. 1. Branin had initially advanced two alternative grounds for indemnification, but withdrew his second and third counts. *See* Stipulation and Order of Dismissal of Counts II and III of the Verified Am. Compl., Oct. 21, 2013.

3

damage or claim by reason of any act or omission performed or omitted by such Person in good faith on behalf of the Company and, as applicable, in a manner reasonably believed to be within the scope of the authority conferred on it by this Agreement, except that no Member, Manager or employee shall be entitled to be indemnified in respect of any loss, damage or claim incurred by it by reason of such Person's gross negligence or willful misconduct by such Person with respect to such acts or omissions; provided, however, that any indemnity under this Section 8.7 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.[6]

On February 11, 2003, several months after Bessemer commenced the New York Action, SRIC LLC's members adopted the Second Amendment to the Operating Agreement (the "Second Amendment").[7]  The Second Amendment revised the indemnification provision in an attempt to remove the New York Action from its scope:

> [N]o Member, Manager or employee shall be entitled to be indemnified in respect of any loss, damage or claim incurred by reason of such Person's . . . breach of any agreement, express or implied, entered into by such Person with one or more outside parties prior to such Person's association with the Company . . . .[8]

In December 2004, Branin first requested indemnification for fees and expenses that he had incurred in the New York Action.[9]  Defendants refused those demands, asserting in part that "any debate over indemnification is premature,

---

[6] Cambria Aff. Ex. 2 (First Amendment) § 8.7.

[7] The Operating Agreement explicitly allowed members to vote to amend it.

[8] Cambria Aff. Ex. 3, at § 8.7.

[9] Transmittal Aff. of John M. Seaman, Esq., Nov. 24, 2014 ("Seaman Aff.") Ex. 12.

given that an outcome in the *Bessemer* litigation is still pending."[10] Defendants rejected further demands for indemnification, which Branin made in 2005, 2006, 2008, and 2012.[11]

## II. NATURE AND STAGE OF THE PROCEEDINGS

The New York Action was resolved with finality on July 24, 2012, with all claims against Branin dismissed with prejudice. Branin initiated this action for indemnification on April 17, 2013, and both sides moved for judgment on the pleadings. Defendants argued in part that the Second Amendment controls their indemnification obligation. Because the Second Amendment purportedly excluded the New York Action from its scope, Defendants contended that they are not required to indemnify Branin. Branin disagreed, arguing that Defendants' obligation to indemnify him vested when Bessemer began the New York Action. Accordingly, the broader First Amendment dictates Branin's indemnification right, entitling him to relief.

The Court issued a Memorandum Opinion and Order (the "June 30 Decision"),[12] denying both motions. The Court concluded that Branin's contingent

---

[10] Seaman Aff. Ex. 16, at 2.

[11] *See* Seaman Aff. Exs. 13-20 (correspondence between Branin's counsel and Defendants regarding indemnification).

[12] *Branin v. Stein Roe Inv. Counsel, LLC*, 2014 WL 2961084 (Del. Ch. June 30, 2014). Branin had withdrawn his second and third counts. *See supra* note 5. The June 30 Decision thus addressed Branin's first count, which sought indemnification pursuant to the Operating Agreement.

5

right to indemnification vested on November 22, 2002, when the New York Action commenced, and it was not rescinded by subsequent amendment. Therefore, the First Amendment governs Defendants' indemnification obligation. However, the Court could not resolve on the record before it whether Branin had acted in good faith on SRIC LLC's behalf and in a manner reasonably believed to be within the scope of his authority. Therefore, it could not determine whether Defendants must indemnify him.

The parties subsequently agreed to a Stipulation and Order on Liability, Leave to Amend Answer, and Briefing Schedule (the "Stipulation").[13] The Stipulation resolved the open factual issues in Branin's favor and allowed Defendants to amend their answer to add as affirmative defenses the statute of limitations and laches. Defendants added those defenses, asserting that a necessary consequence of the June 30 Decision was that the statute of limitations for Branin's indemnification claim began running on November 22, 2002. Branin then moved to strike the new affirmative defenses and for summary judgment on the remaining issues in the action.[14] Defendants also moved for summary judgment on the issue of liability, relying on their new defenses.

---

[13] Transaction ID 56268236.
[14] Those issues include liability, damages, prejudgment interest, and entitlement to fees on fees.

6

After considering the motions, the Court will strike Defendants' affirmative defenses and grant summary judgment in Branin's favor on Defendants' liability to indemnify him. Branin is also entitled to prejudgment interest and fees on fees.

## III. ANALYSIS

The Court will grant a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[15] Where, as here, the parties cross-move for summary judgment and do not raise any material factual issue, the "Court . . . deem[s] the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[16] "[T]he usual standard of drawing inferences in favor of the nonmoving party does not apply."[17] The central issue to be resolved is whether the statute of limitations on Branin's indemnification claim began to run when his contingent right to indemnification vested in November 2002.[18]

---

[15] Ct. Ch. R. 56(c).

[16] Ct. Ch. R. 56(h). Again, the Stipulation resolved the open factual issues identified in the June 30 Decision.

[17] *Farmers for Fairness v. Kent Cnty.*, 940 A.2d 947, 955 (Del. Ch. 2008).

[18] As will be seen, the Court concludes that the statute of limitations did not begin to run until 2012, when the New York Action was resolved with finality. Alternatively, even if it had started to run in 2002, the continuing breach doctrine would have effectively postponed commencement of the time bar period until 2012. Thus, Branin prevails from either perspective.

A. *The June 30 Decision Did Not Address Accrual for*
   *Statute of Limitations Purposes*

The parties agree that contractual indemnification claims are subject to a three years statute of limitations, which typically begins to run only after the party "entitled to indemnification can be confident any claim against him . . . has been resolved with certainty."[19] While "the question of when a claim for contractual indemnification accrues depends on the contractual language,"[20] the law and policy developed in the 8 *Del. C.* § 145 context is instructive.

> Generally, the matter on which the claim for indemnification is premised may be said to have been resolved with certainty only when the underlying investigation or litigation is definitely resolved. "The implicit rationale for this conclusion is that the person seeking indemnity should not have to rush in at the first possible moment but rather should be able to wait until the outcome of the underlying matter is certain." A successful result on a claim for indemnification in the trial court, for example, does not cause the statute of limitations to begin running if an appeal is taken. Until the final judgment of the trial court withstands appellate review, the outcome of the underlying matter is not certain.[21]

Here, the First Amendment (which governs Defendants' indemnification obligation) conditions SRIC LLC's indemnification obligation: Defendants are not liable to indemnify employees for acts not taken in good faith on behalf of the company or in a manner reasonably believed to be within the scope of the

---

[19] *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 919 (Del. 2004) (internal quotation marks omitted).

[20] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 197 (Del. 2009).

[21] *Scharf*, 864 A.2d at 919 (quoting *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *9 (Del. Ch. Oct. 19, 2000)).

employee's authority.[22]  Branin could not have enforced his indemnification right until the nature of his conduct underlying the New York Action was established.

> As a matter of litigative efficiency, it makes little sense for this court to decide claims for indemnification - as opposed to claims for advancement of litigation expenses - in advance of a non-appealable final judgment. There is simply too great a risk that the appellate courts will take a different view than the trial court for it to make much sense to grapple with indemnification claims until the underlying litigation is concluded with finality.[23]

The underlying New York Action was not dismissed until July 24, 2012.[24] Branin initiated this action thereafter.  Until that action concluded, Branin could not have demonstrated satisfaction of all the indemnification prerequisites, *i.e.*, that his actions had been in good faith and reasonably believed to have been within his authority.  Branin suggests that the case law is clear—for purposes of the statute of limitations, his indemnification claim accrued in July 2012; therefore, this action is timely.

Before the June 30 Decision, Defendants would have concurred that Branin's indemnification claim could not accrue for statute of limitations purposes before final resolution of the New York Action.  They now suggest that the

---

[22] First Amendment § 8.7.  Also, one could not be indemnified for acts done with gross negligence or willful misconduct.  The First Amendment did not provide for advancement.  Indemnification was not dependent upon prevailing in the underlying action as it was in *Scharf*.

[23] *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *9 (Del. Ch. Oct. 19, 2000).

[24] Seaman Aff. Ex. 10.

June 30 Decision held otherwise, quoting certain language from the opinion. Defendants note that the Court framed the primary issues then at issue as follows. First, "when does an indemnification cause of action accrue and will it accrue irrevocably even if the indemnitee is on notice that the agreement which provides for indemnification may be modified?"[25] Second, "[i]f Branin had a viable cause of action for indemnification after Bessemer sued him, could Defendants defeat it by later amending their indemnification agreement?"[26]

The Court concluded "that Branin's right to indemnification . . . accrued under the First Amendment . . . [and] was not unilaterally rescinded because of the Second Amendment."[27]

> If [Branin] satisfies the other substantive requirements of the indemnification provision, SRIC LLC's liability for the claim (the cost of defending against Bessemer in the New York Action) was fixed before the Second Amendment. Additionally, although SRIC LLC's liability for future indemnification claims was limited by the Second Amendment, that agreement did not purport to modify or eliminate (and did not modify or eliminate) any liability that already existed under the [Operating] Agreement.[28]

---

[25] *Branin*, 2014 WL 2961084, at *3.
[26] *Id.*
[27] *Id.* at *8. The Court alternatively stated that Branin's "right did not 'fail to vest' and was not otherwise rescinded by the second amendment to the company's operating agreement." *Id.* at *10. The Court clearly used the words "vest" and "accrue" interchangeably throughout the June 30 Decision.
[28] *Id.* at *8.

10

In context, the Court's holding is clear: Branin's contingent right to indemnification under the Operating Agreement vested when Bessemer initiated the New York Action on November 22, 2002. That was the issue briefed and argued by the parties. The June 30 Decision does not reference any statute of limitations. When the Court authored the opinion, "[b]oth sides agreed, based on clear case law, that any issue of indemnification was premature prior to final resolution of the [New York] Action for the expressed reason that Branin's cause of action for indemnification did not accrue until that point."[29] Neither side addressed the timing of accrual for statute of limitations purposes.

Nonetheless, Defendants emphasize a footnote in the June 30 Decision:

> In a different context [from this action], indemnification may depend upon the indemnitee's final success (or otherwise prevailing) on the claim. In this instance, Branin did not prevail on the Bessemer claim for roughly ten years. Because SRIC LLC did not base its indemnification duties upon the indemnitee's prevailing, there is no argument that its liability to indemnify the claim was somehow delayed until Branin ultimately prevailed. Under the terms of the First Amendment, SRIC LLC's liability to indemnify matured in late 2002.[30]

The footnote was attached to the end of this sentence: "Branin, thus, had a right, [as of 2002,] in the nature of contract, to indemnification by SRIC LLC for the Bessemer claim and the expenses that he would reasonably incur in defending

---

[29] Answering Br. in Opp'n to Pl.'s Mots. for Summ. J. and to Strike Affirmative Defenses 31.
[30] *Branin*, 2014 WL 2961084, at *5 n.39 (citations omitted).

11

against it."[31]  One familiar with the context of the June 30 Decision would understand that the Court addressed vesting for purposes of coverage under the First Amendment, not accrual for statute of limitations purposes.  The question that must now be addressed is whether the Court's choice of words requires it to recognize that the statute of limitations began to run when the New York Action was filed.

Defendants suggest that because the Court determined that Branin's contingent indemnification right "accrued" on November 22, 2002, the law of the case doctrine dictates that the statute of limitations has run.  Allowing for the two years during which the parties agreed to toll the statute of limitations, Branin's claim for indemnification has allegedly been time-barred since November 22, 2007.  Defendants bear the burdens of proof and persuasion with respect to their affirmative defenses.[32]

"[O]nce a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless compelling reason to do so appears."[33]  The Court determines in its discretion whether the law of the case doctrine is applicable, and the doctrine "is

---

[31] *Id.* at *5.

[32] *See Scharf*, 864 A.2d at 915.

[33] *May v. Bigmar, Inc.*, 838 A.2d 285, 288 n.8 (Del. Ch. 2003), *aff'd*, 854 A.2d 1158 (Del. 2004) (quoting *Odyssey P'rs v. Fleming Co.*, 1998 WL 155543, at *1 (Del. Ch. Mar. 27, 1998)).

not an absolute bar to reconsideration of a prior decision that is clearly wrong, produces an injustice or should be revisited because of changed circumstances."[34] Additionally, "[i]f an issue is not presented to a court with the benefit of full argument and record, any statement on that issue by that court is not a holding with binding force."[35]

Nonetheless, the law of the case doctrine "applies to and comprehends . . . all matters decided by necessary implication."[36] Thus, if the Court decides an issue in a party's favor, that party will not be heard to object to the consequences naturally flowing from the holding. Defendants submit that despite the parties' and the Court's lack of focus on the statute of limitations issue, the Court's holding necessarily implies that the statute of limitations has run.

Defendants' argument must be rejected because the vesting of a right under a contract and the accrual of a claim for statute of limitations purposes are not inextricably tied together.[37] Although the June 30 Decision interchangeably uses

---

[34] *Gannett Co., Inc. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000).

[35] *In re MFW S'holders Litig.*, 67 A.3d 496, 521 (Del. Ch. 2013), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014).

[36] *RGC Int'l Investors, LDC v. Greka Energy Corp.*, 2001 WL 312454, at *8 n.34 (Del. Ch. Mar. 7, 2001) (quoting *In re MCA, Inc.*, 774 A.2d 272, 279 n.25 (Del. Ch. 2000)).

[37] For example, in *Scharf,* the Supreme Court explained that "[a] successful result on a claim for indemnification in the trial court . . . does not cause the statute of limitations to begin running if an appeal is taken." 864 A.2d at 919-20. Although the statute would not run, it is clear that the plaintiff's right to indemnification was vested, subject to the outcome of the appeal.

the words "vest" and "accrue," as well as "right" and "cause of action," no matter the word choice, the Court was only making one determination, *i.e.*, when Branin's contingent contractual right was confirmed. Accrual for statute of limitations does not naturally flow from that conclusion.[38] The Court concluded that "if [Branin] satisfies the other substantive requirements of the indemnification provision, SRIC LLC's liability for the claim (the cost of defending against Bessemer in the New York Action) was fixed before the Second Amendment."[39] In contrast, for a claim to accrue or mature for statute of limitations purposes, the plaintiff must be able to bring suit. Here, the standards giving rise to Branin's rights were fixed as a contractual matter as of a date certain in 2002. Yet, Branin could not have filed his indemnification action at that point because the New York Action was ongoing. Until that litigation concluded, the Court would have been unequipped to determine whether Branin had acted in good faith and in a manner reasonably believed to be within his authority.[40] The Court would have therefore been unable to conclude whether indemnification was warranted. Moreover, the Court's

---

[38] One would expect that the Court would have been explicit if it had intended to depart from precedent regarding the statute of limitations.

[39] *Branin*, 2014 WL 2961084, at *8.

[40] Accepting Defendants' current argument would potentially decrease litigation efficiency by promoting the parallel and simultaneous litigation of an underlying action and a related indemnification claim. That would create the possibility for conflicting judgments, and even if that circumstance were avoided, resources could be wasted.

conclusion in no way addressed the implications of a continuing breach, a topic to which the Court now turns.

**B.** *This Action Would Be Timely under the Continuing Breach Exception*

Assuming that Branin's cause of action for indemnification accrued for statute of limitations purposes on November 22, 2002 (which it did not), Defendants had a continuing duty to indemnify him during the course of the New York Action. If Branin had obtained a judgment for indemnification in 2005, Defendants would still have been liable for his future expenses because his indemnification right had vested under the First Amendment. Clearly, requiring Branin to sue continually to enforce his indemnification right would have been inefficient. Fortunately, "[i]n cases of a continuing contract, and a continuing breach, the statute begins to run only when full damages can be determined and recovered."[41] Here, if Defendants had a continuing duty to indemnify, then Branin's out-of-pocket expenses could be considered a continuing injury. "[W]here there is a continuing injury whose damages cannot be determined until the cessation of the wrong, the statute of limitations begins to run no earlier than the last date of that wrong."[42]

---

[41] *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of N.Y.*, 484 F. Supp. 1375, 1390 (D. Del. 1980).

[42] *Id.* (analogizing to Delaware law for continuing torts).

15

If Branin's damages were continuously accruing, then the statute of limitations would be appropriately suspended for the period during which liabilities grew. Additionally, as discussed, Branin would not have been entitled to indemnification had his actions underlying the New York Action been taken in bad faith or outside the scope of his authority. Had Branin been required to seek relief in this Court during the pendency of the New York Action, this Court would have been forced to either (i) independently review Branin's conduct underlying the New York Action (potentially arriving at a conclusion in conflict with another court) or (ii) stay its proceedings. The most reasonable rule, and the one employed by the Court on countless occasions, is that the statute of limitations on Branin's indemnification claim did not begin to run until the underlying litigation was resolved.[43]

Because his claim is timely and the previously unsettled factual issue concerning whether he acted in good faith and in a manner reasonably believed to be within his authority has been resolved in his favor, Branin is entitled to summary judgment on Defendants' obligation to indemnify him.[44]

---

[43] *See supra* Section III.A.

[44] Defendants have not contested the reasonableness of Branin's fees and expenses, which totaled $3,063,736.24. Aff. of Francis S. Branin, Jr. in Supp. of Pl.'s Mot. for Summ. J. ¶ 13; Aff. of Michael P. Collins in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 13-14.

C. *Branin Is Entitled to Prejudgment Interest at the Legal Rate*

Branin is entitled to prejudgment interest, which "is awarded as a matter of right."[45] Interest shall be assessed from August 13, 2012, when Branin's counsel wrote to Defendants demanding indemnification "[n]ow that the outcome of the underlying *Bessemer* litigation has been 'resolved with certainty' . . . ."[46] Branin has suggested that interest should run from when he expended funds in the New York Action, arguing that "[i]f interest began to run *after* the underlying action [was] resolved (as Defendants propose), an indemnitor could unfairly force an Indemnitee to bear the lost time value of money for years simply by challenging the indemnitee's right to indemnification in court."[47]

---

[45] *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992).

[46] Seaman Aff. Ex. 20, at 8. That letter attached a breakdown of the amount due and owing to Branin. *See O'Brien v. IAC/InterActive Corp.*, 2010 WL 3385798, at *16 (Del. Ch. Aug. 27, 2010), *aff'd sub nom. IAC/InterActiveCorp. v. O'Brien*, 26 A.3d 174 (Del. 2011) ("[P]rejudgment interest generally is awarded from the date of a demand for indemnification . . . ."); *Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at *39 (Del. Ch. May 23, 2008) ("Pre-judgment interest shall be assessed at the legal rate from the date the [Plaintiffs] first sought indemnification or advancement for fees and expenses they have proven their entitlement to in this case.").

[47] Opening Br. in Supp. of Pl.'s Mot. for Summ. J. and Mot. to Strike Defs.' Affirmative Defenses ("Pl.'s Opening Br.") 33. Branin cited *Sletten v. Navellier Series Fund*, a Nevada federal case that applied Delaware law, in support of this argument. 2003 WL 21919352 (D. Nev. June 20, 2003). The *Sletten* court held that "[w]here . . . liability accrues over time, interest is calculated from the date each payment was due. Therefore, Plaintiff is entitled to prejudgment interest on each installment he paid, from the date on which he paid it." *Id.* at *5 (citation omitted). Although *Sletten* dealt with indemnification, it cited *Citadel Hldg.*, a case involving advancement. 603 A.2d at 826. In the advancement context, a

However, "[i]n the contractual setting, pre-judgment interest should . . . not accrue until the point at which the defendant has, without justification, refused to live up to its obligation to make payment."[48] The Operating Agreement granted Branin a right to indemnification, but not to advancement.[49] As discussed, *supra* Section III.A, a request for indemnification is properly made once the underlying litigation is resolved or when the threshold standard can be practicably addressed. Lacking a right to advancement, Branin was responsible for fronting the costs of his defense. Defendants breached no obligation to indemnify him while the New York Action was pending because, for instance, determination of his good faith would not have been a reasonable effort until the outcome of (and reasons for the outcome of) the New York Action was known.

Regarding the appropriate interest rate, "[w]here there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due . . . ."[50] The Court has broad equitable discretion to fix a rate, but "where a damages claim . . . [is] 'legal, rather than equitable, in nature,' the statutory rate

---

defendant's obligation to pay may accrue over time because the defendant agreed contractually to cover expenses as they are incurred. In that context, interest may be calculated from dates preceding resolution of the underlying litigation.

[48] *Citrin v. Int'l Airport Ctrs. LLC*, 922 A.2d 1164, 1167 (Del. Ch. 2006).

[49] Branin recognizes this point. *See* Pl.'s Opening Br. 33-34 n.6.

[50] 6 *Del. C.* § 2301(a).

should be applied."[51] Here, there is no principled reason to depart from the legal rate. Additionally, the statute has been interpreted as providing for simple interest only.[52] While the Court has questioned the rule of awarding simple interest, it cannot legitimately reinterpret the statute.[53] Branin's argument for compound interest rests on little more than the observation that the Court has the power to award it, but the circumstances of this case do not warrant an award other than prejudgment simple interest at the statutory legal rate.[54]

### D. *Branin Is Entitled to Fees on Fees*

The Operating Agreement provides indemnification "[t]o the full extent permitted by applicable law."[55] As in the corporate context, that language provides Branin the right to recover fees incurred in successfully prosecuting his

---

[51] *Brandin v. Gottlieb*, 2000 WL 1005954, at *29 (Del. Ch. July 13, 2000) (quoting *Am. Gen. Corp. v. Cont'l Airlines Corp.*, 622 A.2d 1, 14 (Del. Ch. 1992), *aff'd*, 620 A.2d 856 (Del. 1992)). "As a general matter, it makes sense for the Court of Chancery to apply the statutory rate where the damage case before it is identical to a claim that could have been brought in Superior Court were there no need for this court to decide other equitable issues." *Id.*

[52] *Brandin*, 2000 WL 1005954, at *28.

[53] *Id.* at *29.

[54] Branin asked the Court to adopt the rate of return on one of Defendants' investment funds, arguing that the fund's overall investment methodology closely tracks his own. Pl.'s Opening Br. 37. Alternatively, he recommended the overall average market returns as evidenced by the S&P 500. *Id.* at 38. Neither of these measures is appropriate.

[55] First Amendment § 8.7.

19

indemnification claim.[56] He is entitled to all fees and expenses reasonably incurred in prosecuting this action.[57]

## IV. CONCLUSION

Branin's motion to strike Defendants' affirmative defenses and for summary judgment is granted. Defendants' motion is denied. Branin is entitled to prejudgment simple interest at the statutory rate running as of August 13, 2012, as well as "fees on fees."

Counsel are requested to confer and to submit an implementing form of order.

---

[56] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *15 (Del. Ch. Jan. 23, 2006).

[57] The portion of expenses a plaintiff may recover must be commensurate with his level of success on his indemnification action. *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1058 (Del. Ch. 2014). Branin's complete success on his indemnification claim entitles him to recover all reasonable fees and expenses. Despite Defendants' assertions to the contrary, a judgment entitling Branin to his "fees on fees" is not advisory in nature.