# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| TAKRAF USA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N24C-01-090 VLM CCLD |
| v. | ) | |
| | ) | |
| FMC TECHNOLOGIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Submitted:  May 1, 2024
Decided: August 28, 2024

*Upon Defendant's Motion to Dismiss Amended Complaint,*
**DENIED.**

Thad J. Bracegirdle, Esquire, of Bayard, P.A., Wilmington, Delaware, and Chad I. Michaelson, Esquire, Antoinette C. Oliver, Esquire, and Kate E. McCarthy, Esquire, of Meyer, Unkovic & Scott LLP, Pittsburgh, Pennsylvania, attorneys for Plaintiff.

Samuel T. Hirzel, II, Esquire, and Elena M. Sassaman, Esquire, of Heyman Enerio Gattuso & Hirzel LLP, Wilmington, Delaware, attorneys for Defendant

**Medinilla, J.**

# I. INTRODUCTION

This is a breach-of-contract action for indemnification and related losses suffered by a buyer, Plaintiff TAKRAF USA, Inc. ("Plaintiff" or "TAKRAF"), due to a prior litigation. The seller, Defendant FMC Technologies, Inc. ("Defendant" or "FMC"), moves to dismiss the Amended Complaint under Superior Court Civil Rule 12(b)(6). It argues that TAKRAF fails to state a claim for two reasons. First, that the parties' Asset Purchase Agreement ("APA") speaks to post-Closing claims for which FMC bears no obligation, which FMC maintains includes the circumstances here. Second, FMC says that if this Court determined TAKRAF's claims to be pre-Closing, the claims suffer the same fate as time barred. For the reasons stated below, Plaintiff's claims are reasonably conceivable and survive dismissal at this juncture.

# II. RELEVANT BACKGROUND[1]

## A. Factual Background

In 2015, the University of Alaska at Fairbanks ("UAF") contracted with Haskell/Davis Joint Venture ("HDJV") for the provision of construction management services to replace UAF's coal-fired heat and power plant ("UAF Project").[2] As part of the UAF Project, HDJV was tasked with securing and

---

[1] The following facts are derived from the allegations in the Amended Complaint and the documents either incorporated therein or integral thereto. *See* Amended Complaint, D.I. No. 7 (hereinafter, "Am. Compl."). The Court accepts these allegations as true solely for purposes of this motion.

[2] *Id.* ¶ 8.

2

supplying a material handling system ("MHS") intended to transport coal from trucks or railcars to fuel storage silos on the UAF campus.[3]

On October 14, 2015, HDJV issued a nearly $4 million purchase order to FMC for the design, manufacture, and delivery of the MHS on or before December 31, 2016 (the "HDJV Contract").[4] The HDJV Contract incorporated technical specifications from the UAF-HDJV contract, which required that the MHS meet certain performance criteria.[5]

In late 2016,[6] TAKRAF and FMC entered into an Asset Purchase Agreement (the "APA"), which closed on December 22, 2016.[7] Through the APA, TAKRAF purchased substantially all of FMC's assets.[8] FMC represented in the APA that it was in material compliance with all assigned contracts, including the HDJV Contract,[9] and agreed to indemnify TAKRAF for losses incurred due to a breached representation.[10] At the time of the APA's Closing, FMC had completed the design, manufacture, and delivery of the MHS under the HDJV Contract.[11]

---

[3] Id. ¶ 9.
[4] Id. ¶ 10.
[5] Id. ¶ 11.
[6] The Amended Complaint states the parties entered the APA in "September 2016." Id. ¶ 1. The APA itself is dated November 1, 2016. Am. Compl., Ex. 2 (hereinafter, "APA"). This discrepancy has no bearing on this decision.
[7] Am. Compl. ¶ 14.
[8] APA § 2.1.
[9] Id. § 6.9.
[10] Id. § 14.2.
[11] Am. Compl. ¶ 15.

In February and April of 2017, TAKRAF and HDJV negotiated two change orders to the MHS purchase order.[12]  After HDJV installed the MHS at UAF, it claimed the MHS did not meet the performance specification that FMC had agreed to in the HDJV Contract.[13]  HDJV alleged that "the MHS (1) was unable to meet minimum coal throughput requirements; (2) had undersized and failing parts; and (3) allowed excessive and dangerous amounts of coal dust and coal to spill and or escape the MHS."[14]

HDJV first advised TAKRAF of these performance problems in October 2018 and delivered a formal notice of breach of the HDJV Contract to TAKRAF in June 2019.[15]  On April 10, 2020, TAKRAF provided FMC with formal notice of the alleged breach.[16]  After no response, TAKFRAF sent a second notice in May 2020.[17]

## B. The HDJV Litigation

On September 24, 2020, HDJV filed suit against TAKRAF in the United States District Court for the District of Alaska, raising claims of breach of contract, breach of express warranty, and breach of warranty under the Uniform Commercial Code, as well as a claim against TAKRAF's surety pursuant to a performance bond

---

[12] Am. Compl., Ex. 1 ¶ 12.
[13] Am. Compl. ¶ 18.
[14] *Id.* ¶ 19.
[15] *Id.* ¶ 20.
[16] *Id.* ¶ 21.
[17] *Id.* ¶ 22.

(the "HDJV Litigation").[18] HDJV's allegations focused on FMC's conduct in the design, manufacture and procurement of the MHS, which occurred prior to the Closing of the APA transaction.[19]

On October 1, 2020, TAKRAF provided FMC with a copy of the HDJV Complaint and a renewed demand under the APA that FMC tender a defense of TAKRAF or otherwise indemnify it for any losses incurred in the HDJV Litigation.[20] TAKRAF alleges that the averments of the HDJV Complaint, if true, establish that prior to the Closing of the APA transaction, FMC was not in compliance with the provisions of the HDJV Contract and was in default of its obligations thereunder.[21] TAKRAF continues that the HDJV Contract contained a requirement to meet certain performance specifications with which FMC was unable to comply.[22] As a result of the nonconforming MHS, HDJV sought damages in an amount no less than $1,371,134.[23]

After more than two years of litigation, TAKRAF and HDJV participated in mediation in December 2022 to resolve HDJV's claims relating to FMC's design and manufacture of the MHS.[24] TAKRAF provided FMC with updates of the

---

[18] *Id.* ¶ 23.
[19] *Id.* ¶ 24.
[20] *Id.* ¶ 25.
[21] *Id.* ¶ 27.
[22] *Id.* ¶ 28.
[23] *Id.* ¶ 29.
[24] *Id.* ¶ 31.

litigation as well as TAKRAF's defense costs.[25]  It further notified FMC of the mediation and invited it to participate; Defendant declined.[26]  On January 4, 2023, HDJV agreed to dismiss the lawsuit and release all claims against both TAKRAF and FMC in exchange for a payment of $875,000.[27]

## C. This Litigation

Based on these allegations, on January 12, 2024, TAKRAF filed its initial Complaint against FMC[28] and amended the same on March 7, 2024.[29]  TAKRAF asserts a sole breach-of-contract claim against FMC for failing to indemnify the losses incurred in excess of $1.8 million in connection with the HDJV Litigation, which includes the settlement of $875,000, reasonable attorneys' fees, consultant fees, and costs of litigation.[30]  TAKRAF seeks judgment for all losses for which FMC is responsible under Article 14 of the APA, an award of interest on FMC's unpaid obligations under Article 14 of the APA at the rate set for under Section 14.7, and post-judgment interest at the statutory rate and any other relief deemed just and proper.[31]

---

[25] *Id.* ¶ 30.
[26] *Id.* ¶ 32.
[27] *Id.* ¶ 33.
[28] *See* Complaint, D.I. No. 1.
[29] *See* Am. Compl.
[30] *Id.* ¶ 34.
[31] *Id.* at Prayer for Relief.

FMC moved to dismiss on March 27.[32]  TAKRAF filed its opposition on May 1, 2024.[33]  The Court heard oral arguments on May 7, 2024.[34]  The matter is ripe for decision.

## III.   STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[35]  Even vague allegations are considered well pled if they give the opposing party notice of a claim.[36]  The Court must draw all reasonable inferences in favor of the non-moving party.[37]  However, the Court will not "accept conclusory allegations unsupported by specific facts," nor "draw unreasonable inferences in favor of the non-moving party."[38]  The Court will grant a motion to dismiss "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle [the plaintiff] to relief."[39]

---

[32] *See* FMC Technology's Motion to Dismiss, D.I. No. 8 (hereinafter, "Mot.").
[33] *See* Plaintiff's Opposition to Motion to Dismiss, D.I. No. 11 (hereinafter, "Opp'n").
[34] *See* Judicial Action Form, D.I. No. 14.
[35] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).
[36] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).
[37] *Id.*
[38] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citation omitted), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).
[39] *Sliney v. New Castle Cty.*, 2019 WL 7163356, at *1 (Del. Super. Dec. 23, 2019) (citation omitted).

## IV.    DISCUSSION

**A. TAKRAF Sufficiently Pleads a Breach of Contract Claim.**

FMC first asks for dismissal on the basis that TAKRAF's post-Closing claims were assumed by TAKRAF pursuant to the APA.[40]  FMC argues that under the APA, TAKRAF expressly assumed all liabilities and obligations of FMC as of the APA's Closing date in December 2016.[41]  Thus, any allegations of "performance issues" alleged by HDJV that occurred after installation and testing of the Material Handling Equipment supplied by TAKRAF, are post-Closing claims.[42]  According to FMC, TAKRAF offers no factual allegations that would demonstrate that FMC's representations and warranties were false at the time of Closing.[43]  Not so.

By the APA's Closing date, FMC had completed the design, manufacture and delivery of the system it promised under the HDJV Contract.[44]  Thereafter, HDJV informed TAKRAF that the MHS failed to meet FMC's required performance specifications and eventually sued TAKRAF.[45]  Since the APA closed only after FMC had performed its design, manufacture, and delivery of the MHS, TAKRAF

---

[40] Mot. ¶ 7.
[41] *Id.* ¶ 8.
[42] *Id.* ¶10.
[43] *Id.* ¶ 7.
[44] Am. Compl. ¶ 15.
[45] *Id.* ¶ 18.

alleges that FMC breached the representations and warranties under Section 6.9, and

that FMC is obligated to indemnify it under Section 14.2 of the APA.[46]

Under Section 6.9, FMC represented, in part, that:

"[T]he parties [to the HDJV Contract] are in compliance with the provisions thereof, no party is in default in the performance, observance or fulfillment of any material obligation, covenant or condition contained therein, and no event has occurred that with or without the giving of notice or lapse of time, or both, would constitute a default thereunder. No such agreement, contract, commitment, lease or other instrument, document or undertaking contains any contractual requirement with which [FMC] or to [FMC's] knowledge any other party thereto will be unable to comply."[47]

Section 14.2 provides in part:

<u>Indemnification by [FMC].</u> "Seller Liabilities" shall mean all Losses resulting from, arising out of, or incurred by [TAKRAF]. . . after the Closing Date in connection with (i) any breach of any of the representations or warranties made by [FMC] in this Agreement[.]"[48]

That TAKRAF assumed all liabilities as of the Closing Date of the APA,

December 22, 2016, would not shield FMC from indemnification under Section 14.2

if TAKRAF can prove that FMC breached its representations or warranties at the

time of Closing.

TAKRAF avers that at the time of the APA's Closing, FMC was in default of

a contractual obligation in the HDJV Contract to design, manufacture and deliver a

---

[46] *Id.* ¶¶ 43-47.
[47] APA § 6.9.
[48] *Id.* § 14.2.

MHS that met the specifications of the HDJV Contract. Even if the performance issues alleged by HDJV appeared after installation and testing of the MHS, the HDJV Litigation and resultant settlement—as alleged in the Amended Complaint—was focused on FMC's role in the design, manufacture, and delivery of the MHS. Therefore, the allegations sufficiently plead that FMC's representation in Section 6.9 was false at the time of Closing because FMC had not met the requirements of the HDJV Contract. The Court notes that the Settlement and Release between HDJV and TAKRAF mirrors the averments in the Amended Complaint.[49] Namely, that both TAKRAF and FMC were released[50] and "HDJV's allegations focused on FMC's design and procurement decisions that occurred prior to delivery of the MHS to UAF."[51]

FMC urges that the facts that (1) HDJV discovered the alleged defects almost two years after the APA closed, (2) TAKRAF and HDJV negotiated two change orders in 2017, and (3) TAKRAF and HDJV spent a year trying to correct the alleged defects, all support the conclusion that the alleged defects post-date the execution of the APA.[52] As already noted, HDJV's claims related to pre-Closing design defects, not errors made during the installation of the MHS. Any argument that the two post-

---

[49] Am. Compl., Ex. 3 (hereinafter, "Settlement Agreement").
[50] *Id.* § 3.
[51] *Id.* at Recitals.
[52] Mot. ¶¶ 3, 7, 10.

Closing change orders relieved FMC of liability is speculative at this stage of the proceedings. And the suggestion that FMC worked with HDJV to address the issues that FMC allegedly created does not lead this Court to conclude that FMC is therefore absolved from its obligation to indemnify. The Court reiterates that all reasonable factual inferences are drawn in TAKRAF's favor at this stage.[53]

Without discovery, any determination of factual disputes at this stage of the proceedings is not proper.[54] The only question is whether TAKRAF has sufficiently pled in their Amended Complaint that FMC's breach of the APA caused TAKRAF to incur the damages it now seeks to recover. It has.

### B. TAKRAF's Claims are Not Barred by the Statute of Limitations.

FMC alternatively argues that if the Court determines the breach arose pre-Closing, then dismissal remains appropriate because TAKRAF's claim would be time barred.[55] Here, FMC argues that under Delaware law, a party alleging harm by a breach of contract must assert its claim within three years of that breach.[56] Relying on Section 14.1 of the APA, which provides that the representations and warranties contained in Section 6.9 "shall survive for the full period of all applicable

---

[53] *In re Gen. Motors*, 897 A.2d at 168.
[54] *See Steele ex rel. C.M.S. v. Allstate Prop. & Cas. Ins. Co.*, 2021 WL 352150, at *1 n.1 (Del. Super. Jan. 13, 2021) ("[T]he Court must resolve factual disputes in favor of the non-moving party at the motion to dismiss stage[.]").
[55] Mot. ¶ 11.
[56] *Id.* ¶ 12 (citing *Lehman Bros. Hldgs., Inc. v. Kee*, 268 A.3d 178, 185 (Del. 2021)).

statutes of limitations . . . plus sixty (60) days,"[57] FMC argues that TAKRAF's claim against it are subject to a three-year and sixty-day survival period.[58] FMC maintains that if TAKRAF's claim accrued at or before Closing,[59] then TAKRAF's claim—raised seven years post-Closing in January 2024—is now barred by the statute of limitations and the APA's survival period.[60]

Under Delaware law, the general rule is that "a party harmed by a tort, breach of contract, or similar wrong must file suit within three years of when that cause of action accrued."[61] Delaware law also allows "[p]arties [to] contract for representations to survive closing by incorporating a survival clause in the transaction agreement."[62] "[W]ith the effectiveness of Section 8106(c), parties can now extend the statute of limitations up to a maximum of twenty years."[63]

As our Supreme Court has explained:

> The single, well-defined moment in time when the statute of limitations begins to run on claims for indemnification is when the outcome of the underlying matter is certain. This involves a two-part analysis. First, the underlying matter must be identified. Second, the date when the outcome of that underlying matter was resolved with certainty must be determined.[64]

---

[57] APA § 14.1.
[58] Mot. ¶ 12.
[59] *Id.* ¶ 13.
[60] *Id.*
[61] *Lehman Bros.*, 268 A.3d at 185.
[62] *Bear Stearns Mortg. Funding Tr. 2006-SL1 v. EMC Mortg. LLC*, 2015 WL 139731, at *14 (Del. Ch. Jan. 12, 2015) (citing *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *13 (Del. Ch. July 11, 2011)).
[63] *Id.* (discussing 10 *Del. C.* § 8106(c)).
[64] *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 920 (Del. 2004).

Here, FMC correctly notes that Section 14.1 subjects TAKRAF's claims against FMC to a three-year and sixty-day survival period.[65]  But that clock only started to run when the HDJV Litigation "was resolved with certainty."[66]  The HDJV Litigation was resolved with certainty when TAKRAF and HDJV settled on January 4, 2023.[67]  Since TAKRAF filed its Complaint in January 2024, its claims are timely.

## V.    CONCLUSION

Plaintiff alleges facts that, if true, would satisfy the elements of breach of contract.  Accordingly, Defendants' Motion to Dismiss is **DENIED.**

/s/ Vivian L. Medinilla
J. Vivian L. Medinilla

---

[65] APA § 14.1.
[66] *Scharf*, 864 A.2d at 920.
[67] Settlement Agreement at 1.